## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| MICHAEL A. NARDONE | : | CASE NO. 05-21490-JBR |
| <u>DEBTOR</u> | : | |
| CARL S. LERARIO | : | |
| ASTRID G. LERARIO | : | |
| Plaintiffs, | : | |
| v. | : | Adv. Pro. No 06-1019 |
| MICHAEL A. NARDONE, | : | |
| Defendant. | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING COLLATERAL ESTOPPEL

This Court entered an Order Regarding Bifurcation of Issues for Trial pursuant to which it tried only the issue of whether the agreement for judgment entered in the state court litigation precludes further litigation of the dischargeability action.[1]  An evidentiary

---

[1]Judge Somma had denied the Plaintiffs' Motion for Summary Judgment in an order that reads in part:

> The moving parties contend that this agreement for judgment both waives and precludes the Debtor's right to contest their dischargeability claim.  However, this right is not waivable (and any such waiver is unenforceable).

> Moreover, the issue of fraud has not been actually litigated where, as here, there are questions requiring an evidentiary hearing, whether the Debtor intended the agreement for judgment to preclude his right to relitigate the issue of fraud and whether he entered into the agreement for judgment knowingly and voluntarily after having obtained an informed explanation of its legal significance.

The Court reads the order as finding that an evidentiary hearing is required to determine whether fraud was actually litigated, not as a finding that the agreement for

hearing was held at which the direct testimony of the Plaintiffs was received by affidavit [docket # 67 and # 68]; the Plaintiffs were crossed examined at trial.  The Defendant's direct testimony was also by affidavit [docket # 65]; he was cross-examined at trial and provided further testimony upon redirect examination by his counsel.  The Court now issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

**FACTS**

In December 1999 the Plaintiffs, Carl S. Lerario and Astrid G. Lerario, entered into a construction contract with Michael A. Nardone, the Defendant, and his construction company, Nardone Construction and Contracting Co., Inc. (collectively with the Defendant, the "State Court Defendants") for the demolition and rebuilding of their commercial property located in Wakefield, Massachusetts (State Court Complaint at ¶¶ 7 and 10).[2]  The project did not proceed as the Plaintiffs anticipated nor as they claim the Defendant told them it would and on or about November 10, 2000, the Plaintiffs filed a complaint in the Essex County Superior Court, Civil Action No. 2000-2039 (the "State Court Action"), against the State Court Defendants.  The Plaintiffs sought damages allegedly incurred as a result of the Defendants' intentional misrepresentations (Count II), conversion (Count IV), breach of the covenant of good faith and fair dealing (Count V), and violations of M.G. L. c. 93A (Count IX), among other things.[3]   Specifically in the

---

judgment cannot satisfy the "actually litigated" requirement as a matter of law.

[2]The State Court Complaint, the Answer, the Agreement for Judgment, and execution were all admitted in evidence by agreement.

[3]The other counts were ultimately dismissed.

State Court Action the Plaintiffs alleged, and the Defendant denied, that the Defendant

induced them into paying him substantial amounts of money by intentionally and

fraudulently misrepresenting his status as a licensed construction supervisor; his

qualifications and experience to do the job; the time and cost to do the job; the size of

the Defendant's company, including the fact that he had a licensed architect on staff,

who would prepare the plans for the project; that he would obtain all the necessary

permits; and that all the work would meet the applicable building codes, laws and

regulations (State Court Complaint at ¶¶ 8 and 9).  The Defendant, however, was not at

that time, and never was, a licensed construction supervisor (Answer at ¶ 13).[4]

Moreover neither the Defendant nor his company had a licensed architect on staff.

Instead the Defendant submitted plans to the Town that were originally signed by an

architectural student whom the Defendant retained on behalf of his construction

company (Answer at ¶ 15).  The Defendant alleged that the Plaintiffs were aware of the

student's status (*Id.*).  Subsequently, in response to the Town Building Inspector's

issuance of an order to stop the project until he received amended plans reviewed and

signed by a licensed architect or engineer, the Defendant retained an unlicensed

individual but claims that at the time of the hire, he believed the individual was licensed

(*Id.* and Defendant's Admitted Facts, included in the Joint Pretrial Memorandum at ¶ J).

---

[4]In his State Court Answer, Joint Pretrial Memorandum, the Affidavit of his direct
testimony, and indeed upon cross-examination at the trial before this Court, the
Defendant attempted to maintain the charade that he had been a licensed construction
contractor but his license lapsed whereon he immediately took steps to reinstate his
license.  In his answers to interrogatories in the State Court Action, the Defendant
admitted he was never a licensed construction supervisor and when confronted with
those answer at trial, he admitted he never held a license, a fact he misrepresented to
the Plaintiffs.

The Plaintiffs also alleged that the Defendant represented that each stage of the

construction would be and had been inspected and approved by the Town's building

inspector as each stage was completed although no such inspections occurred or

approvals were obtained when represented (Complaint at ¶ 27).  Work on the project

ceased in September 2000, but the project was ultimately completed by another

construction company (Affidavit of Carl S. Lerario at ¶ 86).

On October 22, 2001 the Defendant went to his attorney's office where both he

and his counsel executed an Agreement for Judgment, which the Plaintiffs subsequently

signed and filed in the State Court Action on November 13, 2001.  The Agreement for

Judgment provides:

> Judgment for the Plaintiffs, Carl S. Lerario and Astrid G.
> Lerario, against the Defendants, Michael Nardone and
> Nardone Construction and Contracting Co., Inc., jointly and
> severally, pursuant to Counts II, IV, V, and IX of Plaintiffs'
> Complaint in the amount of $400,000.00, together with
> interests and costs.  Judgment is being entered on behalf of
> the plaintiffs against said defendants as a result of the
> defendants' specific actions in obtaining said funds from the
> plaintiffs by false pretenses, false representations and actual
> fraud; and as such, it is specifically ordered and agreed that
> this Judgment is a non-dischargeable debt of the defendants
> pursuant to 11 U.S.C. § 523(a)(2) and shall not be
> discharged in any subsequent bankruptcy proceeding.

The Defendant testified that he had not seen the Agreement for Judgment prior

to the day he signed it and that, prior to appearing at his lawyer's office, he was not

aware that the Agreement would provide that the judgment was to be non-

dischargeable.  He also testified that even when he saw the Agreement, he did not

understand the Agreement would make the judgment nondischargeable nor did he

understand that he was permanently giving up his counterclaim.  He claimed he only

understood the Agreement would give the Plaintiffs a $400,000 judgment against him

and the corporation and that each would be equally responsible. He stated he just

wanted to end the suit because he didn't have the money to fight the litigation.  Although

the Debtor repeatedly stated he did not understand the Agreement, he also testified that

he did not ask his attorney to explain it to him.

The Defendant testified that he had a ninth grade education.  He could read but

that to understand what he was reading, he often had to read the material three, four or

five times.  He testified that he read the Agreement for Judgment only once, quickly

while sitting in his lawyer's office.

The Debtor had filed a previous bankruptcy in 1988 and was familiar with the

concept of dischargeability.  The Defendant testified that he knew that if a debt was

discharged in bankruptcy, he would not have to pay it.  Similarly he testified that he

understood a debt that was nondischargeable would be required to be repaid.

I find the Debtor's testimony that he did not understand that the Agreement for

Judgment would contain and did contain language to make the judgment

nondischargeable not credible.  I find the Debtor's testimony that, despite his alleged

lack of understanding as to what the Agreement for Judgment meant, he did not ask his

lawyer to explain it not credible.  I find the Debtor's testimony that he did not understand

or intend the judgment to be nondischargeable not credible.  I find that the Debtor did

understand that the Agreement for Judgment was intended to make the judgment

nondischargeable and that, based on his own prior experience with bankruptcy, he

5

understood the impact of making a judgment nondischargeable.  The Debtor had

previously filed bankruptcy and acknowledged understanding the concept of

dischargeability.  Yet despite this knowledge and the fact that he was represented by

counsel and met with his counsel in the privacy of the attorney's office, without the

Plaintiffs or their counsel present, he purports to have no understanding of the

Agreement's intended effect on any subsequent bankruptcy.  He  asks the Court to infer

that his own counsel never explained this impact to him prior to the execution of the

Agreement.   I find that the Debtor intended that the judgment was not to be discharged

in any subsequent bankruptcy as reflected in the clear language of the judgment.  Now

that his bankruptcy is a reality, he is looking for a way out of the judgment.

On November 13, 2001 the Agreement for Judgment was entered on the docket

in the State Court Action.  On February 20, 2002 the State Court issued an execution on

the agreed judgment in favor of the Plaintiffs in the amount of $461,628.75.[5]  No part of

the judgment has been satisfied.

On October 13, 2005 the Defendant filed a voluntary petition pursuant to Chapter

7 of the Bankruptcy Code.  On January 10, 2006 the Plaintiffs commenced this

adversary proceeding seeking to hold the debt arising from the Agreement for Judgment

nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  Having found that the

Defendant intended the Agreement for Judgment to render the judgment

nondischargeable, the Court needs to examine whether that intent, by itself, is sufficient.

---

[5]It does not appear that a separate judgment was prepared and entered as the
Agreement for Judgment itself "constitutes the judgment for all purposes...."  Mass. R.
Civ. P. 58(a).

6

**DISCUSSION**

11 U.S.C. § 523(a)(2)(A), the section relied upon by the Plaintiffs, excludes from

discharge any debt:

> (2) for money, property, services, or an extension of credit,
> renewal or refinancing of credit to the extent obtained by:
> (A) false pretenses, a false representation or actual fraud,
> other than a statement respecting the debtor's or an insider's
> financial condition.

"Exceptions to discharge are narrowly construed ... and the claimant must show that its

claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)."

*Century 21 Balfour Real Estate v. Menna,* 16 F.3d 7, 9 (1st Cir. 1994).  The claimant

has the burden to prove nondischargeability by a preponderance of the evidence.

*Grogan v. Garner*, 498 U.S.  279, 284-85 (1991).

Collateral estoppel, also known as issue preclusion, prevents the relitigation of

issues already litigated.  "[C]ourts have often recognized, res judicata and collateral

estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

resources, and, by preventing inconsistent decisions, encourage reliance on

adjudication."  *Allen v. McCurry*, 449 U.S. 90, 92, 101 S.Ct. 411, 414, 66 L.Ed. 2d 308

(1980).  Principles of collateral estoppel apply to dischargeability actions under 11

U.S.C. § 523(a) if the standards applied in the earlier action are the same as those for

dischargeability.  *Grogan v. Garner*, 498 U.S.  279, 284-85 (1991).  The law of the state

whose judgment is to be given preclusive effect determines the preclusion effect of the

judgment.  *In re Baylis,* 217 F.3d 66, 70 -71 (1st Cir. 2000).

Massachusetts requires 4 elements for collateral estoppel to apply:

> (1) the issue sought to be precluded must be identical to that in the prior

litigation;

(2) the parties actually must have litigated the issue;

(3) the judgment regarding the issue must have been binding and valid; and

(4) the issue's determination must have been essential to the judgment.

*Martin v. Ring,* 401 Mass. 59, 514 N.E.2d 663, 664 (1987).[6] The "guiding principle" in determining whether to allow a party the use of collateral estoppel is whether the party against whom it is asserted had a "full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue." *Id.* at 62, 514 N.E.2d 663, quoting Restatement (Second) of Judgments § 29 (1982). The party asserting collateral estoppel has the burden of proof. *Com. v. Mendes*, 46 Mass.App.Ct. 581, 587, 708 N.E.2d 117, 122 (Mass.App.Ct.1999). It is that party's burden to "introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly),* 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd,* 100 F.3d 110 (9th Cir.1996).

Whether the Debtor is precluded from discharging the judgment in this case turns on whether any or all of the counts upon which the Agreement for Judgment is based establish that the elements of those state law claims are identical to the elements

---

[6]The Defendant previously argued that the Agreement for Judgment lacked preclusive effect because it was entered against both State Court Defendants. The judgment, however, is joint and several and may have preclusive effect if the test for applying the doctrine of collateral estoppel is satisfied. *In re Markarian*, 228 B.R. 24 (1st Cir. B.A.P. 1998)(collateral estoppel applied to establish fraud of Debtor who was found jointly and severally liable of violating Racketeering Influenced and Corrupt Organizations Act).

needed to sustain a finding of nondischargeability under § 523(a)(2)(A) and, if so, were

those counts "actually litigated."

### The Identity of Issues

> [I]n order to establish that a debt is nondischargeable
> because obtained by "false pretenses, false representation,
> or actual fraud" ... a creditor must show 1) the debtor made a
> knowingly false representation or made one in reckless
> disregard of truth, 2) the debtor intended to deceive, 3) the
> debtor intended to induce the creditor to rely upon the false
> statement, 4) the creditor actually relied upon the
> misrepresentation, 5) the creditor's reliance was justifiable,
> and 6) the reliance upon the false statement caused
> damage.

*McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001).

Although §523(a)(2)(A) includes three arguably distinct types of fraud, namely

false pretenses, false representations and actual fraud, many courts treat these phrases

as "functionally equivalent."  *In re Baietti*, 189 B.R. 549, 553 -554 (Bankr.

D.Me.1995)(undertaking an examination of each term).[7]  In this case the parties have

---

[7]Black's Law Dictionary's attempt to distinguish between the three types of fraud
has been cited by courts and treatises.  It provides

> Actual fraud consists in deceit, artifice, trick, design, some
> direct and active operation of the mind; it includes cases of
> the intentional and successful employment of any cunning,
> deception, or artifice used to circumvent or cheat another. It
> is something said, done, or omitted by a person with the
> design of perpetrating what he knows to be a cheat or
> deception.

Black's Law Dictionary 661 (6th ed.1990), *cited in* 3 Lawrence P. King, *Collier on
Bankruptcy* ¶ 523.08[5], pg. 523-51 n. 24 (15th ed.1996). Yet as other courts have
recognized, "even that definition, which is not based on legislative history or bankruptcy
case law decided under the Bankruptcy Act, does not expand the scope of the already
broad penumbra of activities included within the terms "false representation or false
pretenses...[F]alse pretenses or false representations means *any conduct tantamount to
fraud*...."

treated the terms as functionally equivalent and the Court will do likewise. *See also In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001)(implicitly treating the terms as the same).

The first two elements of § 523(a)(2)(A) describe the conduct and scienter required to show a debtor's fraudulent conduct generally while the last four elements embody the requirement that the creditor's claim must arise as a direct result of the debtor's fraud. *Id.* Proof of scienter is essential to a judgment under § 523(a)(2)(A) and cannot be presumed to exist.

To satisfy the scienter requirement, a plaintiff must prove actual fraud, not simply fraud implied by law. Fraud implied in law refers to fraud that "does not require a showing of bad faith or immorality.... Therefore, a mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under § 523(a)(2)(A)." *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D.Ind.1988) (internal quotation marks and citations omitted). Actual fraud "requires an actual intent to mislead, which is more than mere negligence.... An honest belief, however unreasonable, that the representation is true and that the speaker has information to justify it is an insufficient basis for deceit. [W. Page] Keeton, *et al.*, [Prosser and Keeton on the Law of Torts] at 742. A 'dumb but honest' defendant does not satisfy the test of scienter." *Palmacci v. Umpierrez,* 121 F.3d 781, 788 (1st Cir. 1997)(internal citations omitted).

"[W]hile fraud may not be implied in law, it may be inferred as a matter of fact. The finder of fact may infer[ ] or imply[ ] bad faith and intent to defraud based on the

---

*In re Gilmore*, 221 B.R. 864, 872 (Bankr. N.D.Ala.1998)(internal quotation marks and citations omitted).

totality of the circumstances when convinced by a preponderance of the evidence." *Id.*
at 789 (internal quotation marks and citations omitted). "[A] determination concerning
fraudulent intent depends largely upon an assessment of the credibility and demeanor
of the debtor." *Id.* at 785.

Application of these principles of law is different from the more common scenario
where the Court is asked to determine scienter. In this case, where the preclusive
effect of the Agreement for Judgment is at issue, the Court is not trying the issue of the
Defendant's scienter; rather the question is whether the Agreement for Judgment
establishes the requisite scienter. As the Plaintiffs pled "intentional misrepresentation"
in Count II of the State Court complaint, the critical question is whether, under
Massachusetts law, intentional misrepresentation is synonymous with actual fraud. The
answer is a definitive "it depends."

The standards to establish "intentional misrepresentation" under Massachusetts
law *may or may not* be the same as those needed to find the debt nondischargeable
under § 523(a)(2)(A). It depends on what the phrase "intentional misrepresentation"
encompasses, including whether the speaker needs to have actual knowledge of the
falsity of the statement in order to prove his intent to deceive.

Cases refer to the tort of the kind alleged by the Plaintiffs in the state court Action
as "deceit," fraudulent misrepresentation" or "fraud." Although Massachusetts cases
which actually use the term "intentional misrepresentation" are scant,[8] deceit is a broad

---

[8] The role of the speaker's knowledge when *intentional* misrepresentation is
alleged, however, was addressed in the 2002 *unpublished* decision of the
Massachusetts Appeals Court of *Gagnon Welding & Contracting Corp. v. Town of
Lynnfield*, 2002 WL 31698148, 3 (Mass.App.Ct.), but even in that instance, the word
"intentional" was inserted into the statement of existing case law by the appeals court.

term that is a synonym for "intentional misrepresentation."   *Sack v. Friedlander (In re Friedlander)*, 170 B.R. 472, 476 (Bankr. D. Mass. 1994)("Massachusetts cases cite "two positions as to the elements of deceit (also known in Massachusetts as fraud or as fraudulent or intentional misrepresentation).").

In *Friedlander* Judge Kenner's parsing of Massachusetts  law highlights the critical difference in Massachusetts case law for the purpose of determining whether there is actual fraud.  Simply put, one position includes the requirement that a defendant have made a false representation of a material fact, with knowledge of its falsity, for the purpose of inducing the plaintiff to act, *Danca v. Taunton Savings Bank*, 385 Mass. 1, 429 N.E.2d 1129 (!982), while in the other seemingly irreconcilable line of cases "intentional misrepresentation is not a prerequisite to recovery for deceit."  *Snyder v. Sperry & Hutchinson Co.,* 368 Mass. 433, 444, 333 N.E.2d 421, 428 (Mass. 1975).  The *Danca* test is virtually identical with the requirements of § 523(a)(2)(A)[9] while the *Snyder*

─────────────────────

"A claim for [intentional] misrepresentation requires that a plaintiff show a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment." *McEneaney v. Chestnut Hill Realty Corp.,* 38 Mass.App.Ct. 573, 575, 650 N.E.2d 93 (1995), citing *Zimmerman v. Kent,* 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70 (1991)(brackets in the original text).

Although unpublished decisions of the appeals court issued pursuant to Rule 1:28 are not to be cited as precedent, the Court quotes the decision merely as further support for the conclusion that the term "intentional fraud" is interchangeable with the terms "fraudulent misrepresentation," "fraud," and "deceit."

[9]The Court agrees with Judge Kenner's analysis of intent.

Actual fraud under § 523(a)(2)(A) requires proof that the misrepresentation was made "with the intention and purpose of deceiving the creditor."  Deceit under Massachusetts law, as stated in *Danca,* requires that the

requirements for fraud are not.

In oft quoted language, the *Synder* court stated

> In this Commonwealth it has been held in a long line of cases that 'the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made as of the party's own knowledge, which is false; provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.' *Chatham Furnace Co. v. Moffatt*, 147 Mass. 403, 404, 18 N.E. 168, 169 [1888]. *Powell v. Rasmussen*, 355 Mass. 117, 118, 243 N.E.2d 167, 168 (1969). *See Yorke v. Taylor*, 332 Mass. 368, 371, 124 N.E.2d 912 (1955) (rescission); *Maxwell v. Ratcliffe*, 356 Mass. 560, 562, 254 N.E.2d 250 (1969) (damages); *McMahon v. M & D Builders, Inc.*, 360 Mass. 54, 59, 271 N.E.2d 649 (1971) (rescission).

*Snyder*, 433, 444, 333 N.E.2d 421, 428 (Mass. 1975).

Yet in the later decided *Danca* case, the Supreme Judicial Court quoted from its 1963

case of *Barrett Assocs. V. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963), and

its 1950 case of *Kilroy v. Barron*, 326 Mass. 464,465, 95 N.E.2d 190 (1950), in stating

---

> misrepresentation have been made "for the purpose of inducing the Plaintiff to act thereon." *Danca v. Taunton Savings Bank,* 385 Mass. at 8, 429 N.E.2d 1129. In view of the fact that, in both cases, the plaintiff must also prove that the misrepresentation was made with knowledge of its falsity, this Court finds no material difference between intent to deceive and intent to induce reliance. A defendant who knows of the falsity of his representation and makes it with intent to induce action or reliance is, *per se,* acting with intent to deceive.

*In re Friedlander*, 170 B.R. at 477 n. 3 (internal citation omitted).

> In a deceit action, the plaintiff must prove "that the defendant
> made a false representation of a material fact with
> knowledge of its falsity for the purpose of inducing the
> plaintiff to act.

Nor has the confusion surrounding the elements of deceit been lessened with

time.  In the Massachusetts Appeals Court decision of *Zimmerman v. Kent*, 31

Mass.App.Ct. 72, 77-78, 575 N.E.2d 70, 74 (1991), the court set forth the elements of

misrepresentation.[10]  Notably missing from the list are the requirements that the speaker

have knowledge of the falsity of his statement and the intent to deceive.  These

omissions notwithstanding, the appeals court cited *Danca* in the string citation as

support for the elements of the tort.  But to emphasize that actual knowledge of the

falsity is not required, the court also cited to *Snyder* when it stated:

> To sustain a claim of misrepresentation, a plaintiff must
> show a false statement of a material fact made to induce the
> plaintiff to act, together with reliance on the false statement
> by the plaintiff to the plaintiff's detriment. *Powell v.
> Rasmussen,* 355 Mass. 117, 118-119, 243 N.E.2d 167
> (1969). *Danca v. Taunton Sav. Bank,* 385 Mass. 1, 8, 429
> N.E.2d 1129 (1982). *Acushnet Fed. Credit Union v.
> Roderick,* 26 Mass.App.Ct. 604, 605 & n. 1, 530 N.E.2d
> 1243 (1988). The speaker need not know "that the statement
> is false if the truth is reasonably susceptible of actual
> knowledge, or otherwise expressed, if, through a modicum of
> diligence, accurate facts are available to the speaker."
> *Acushnet, supra* at 605, 530 N.E.2d 1243. Where the plaintiff
> proves "a statement made, as of the party's own knowledge,
> which is false, provided the thing stated is not merely a
> matter of opinion, estimate, or judgment, but is susceptible of
> actual knowledge ... it is not necessary to make any further
> proof of an actual intent to deceive." *78 Snyder v. Sperry &
> Hutchinson Co.,* 368 Mass. 433, 444, 333 N.E.2d 421
> (1975), quoting from *Powell v. Rasmussen, supra,* 355

---

[10]In *Zimmerman*, the plaintiffs styled their action as one for "fraudulent
misrepresentation."

>Mass. at 118, 243 N.E.2d 167, in turn quoting from *Chatham
>Furnace Co. v. Moffatt,* 147 Mass. 403, 404, 18 N.E. 168
>(1888).

*Id.*

Judge Kenner also reviewed federal court decisions applying Massachusetts law

of deceit and concluded that the cases were similarly unable to conclude, with any

degree of certainty, whether *Danca* or *Snyder* reflected the law.  As the Court of

Appeals for the First Circuit noted in *Cummings v. HPG Intern., Inc.*, 244 F.3d 16, 22 -

23 (1st Cir. 2001), a case decided after *Friedlander,* the confusion continues.

>The borderline between what is an action for deceit and what
>is an action for *negligent* misrepresentation is unclear under
>Massachusetts case law. In an action for deceit under
>Massachusetts law, a plaintiff must show that the defendant:
>made a false representation of material fact; for the purpose
>of inducing reliance; and that plaintiff relied upon the
>representation to his or her detriment. *Danca v. Taunton
>Sav. Bank,* 385 Mass. 1, 429 N.E.2d 1129, 1133 (1982);
>*Snyder v. Sperry and Hutchinson Co.,* 368 Mass. 433, 333
>N.E.2d 421, 428 (1975). Proof of intent to deceive is not
>required, so long as there is proof of a false representation
>of fact susceptible of the speaker's knowledge. *Snyder,* 333
>N.E.2d at 428. The uncertainty has to do with what role the
>speaker's knowledge of the falsity plays. (Emphasis added).

The court explained that "[t]he confusion may stem from the mixing of the concept of

knowledge with the concept of intent to deceive, or from use of language without an

effort to distinguish which sort of misrepresentation is alleged."  *Id.* at 24.  Indeed the

court recognized that in *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 536

N.E.2d 344 (1989), the SJC suggested that the elements of intentional and negligent

misrepresentation are the same.  "In order for the plaintiff to recover for either

intentional or negligent misrepresentation, the plaintiff must prove that Gaston Snow

falsely represented that the plaintiff would be employed in a position with the new

corporation, and that he reasonably relied on such misrepresentation. *Barrett Assocs. v.

Aronson,* 346 Mass. 150, 152, 190 N.E.2d 867 (1963). See Restatement (Second) of

Torts § 526 (1977)." *Robertson*, 404 Mass at 523, 536 N.Ed2d at 349. *See also*

*Roadmaster Industries, Inc. v. Columbia Mfg. Co., Inc.*, 893 F. Supp. 1162, 1176 (D.

Mass.1995)("A plaintiff may establish liability by proving [either] an intentional, negligent

or innocent misrepresentation under[lies] the formation of a contract....  A plaintiff must

prove that the defendant [1] made a false representation of a material fact [2] with

knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, [4] and

the plaintiff relied upon the representation as true and [5] acted upon it to his

damage.)(internal quotations marks and citations omitted).  Recognizing that the

Supreme Judicial Court has looked to the Restatement of Torts, the circuit court in

*Cummings* used the definition of fraudulent misrepresentation found in the Restatement

(Second) of Torts § 526:

> A misrepresentation is fraudulent if the maker (a) knows or
> believes that the matter is not as he represents it to be, (b)
> does not have the confidence in the accuracy of his
> representation that he states or implies, or (c) knows that he
> does not have the basis for his representation that he states
> or implies.
> "Knowledge" for the purpose of showing fraud is established
> by any of these three conditions.

Application of the various standards to the case at bar leads the Court to

conclude that Count II of the State Court Complaint and the Agreement for Judgment,

when read together, establish by a preponderance of the evidence that the judgment

includes "intentional misrepresentation" under the *Danca* test.  Although the Complaint

16

does not expressly state that the Defendant knew his representations to be false when he made them, and the State Court Defendants denied the substantive allegations, many of the statements, including the Defendant's representations as to his licensing status and inspections by the Town of Wakefield are uniquely within his knowledge. Therefore it is beyond dispute that his statements to the contrary were made with knowledge of their falsity.  The only reasonable conclusion is that the Defendant knowingly made these false representations with the intent to deceive the Plaintiffs so they would hire him and keep him employed as their contractor.  Moreover, the Agreement for Judgment specifically states that the judgment was based upon "false pretenses, false representations, and actual fraud."[11]

Count IX of the State Court Complaint is a count under M.G. L. C. 93A arising from allegations that the Defendant and his company "willfully, intentionally, and/or negligently made false, misleading, and fraudulent misrepresentations concerning their qualifications to build plaintiffs' commercial building, the timeliness of the construction, the employees on their staff, that licensed architects prepared plans, and that the local

---

[11]The Court is aware of the decision in *Rivers Edge Condominium Homeowners Association v. Cohen (In re Cohen)*, 370 B.R. 26, 30 (Bankr. D.N.H. 2007), in which the court refused to give preclusive effect to a default judgment entered in a Massachusetts superior court case.  Paragraph 7 of the state court judgment stated "I find the Plaintiff's damages for the above referenced Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; Unjust Enrichment; Negligence; Conversion; Misrepresentation and Fraud; and Unfair and Deceptive Business Practices, M.G.L. c. 93A, §§ 2, 9 are $60,400.00."  The bankruptcy court concluded that "[t]he mere mention of misrepresentation and fraud in paragraph 7 is not the equivalent of a finding of false pretenses, false representations, or actual fraud for purposes of section 523(a)(2)(A)." The case at bar is distinguishable.  The state court did not accept the allegations of complaint based on the Defendant's failure to defend nor did it merely recite a laundry list of possible theories for recovery; the parties themselves agreed the actions were fraudulent.

Building Inspector had inspected and approved each stage of the construction."  The

Court notes that "liability under c. 93A may flow from negligent misrepresentation."

*Acushnet Federal Credit Union v. Roderick*, 26 Mass.App.Ct. 604, 607, 530 N.E.2d

1243, 1246 (Mass.App.Ct.,1988); *Glickman v. Brown,* 21 Mass.App.Ct. 229, 234-235,

486 N.E.2d 737 (1985) but for the same reasons that the Court concluded that the

intentional misrepresentations satisfied the *Danca* test, the Court concludes that the

judgment under M.G.L. C. 93A was based on the Defendant's intentional

misrepresentations regarding his qualifications and the Town's inspections as

determined by the *Danca* test.  Statements regarding the time for completion and the

cost of the work on the other hand are statements of opinion that cannot be the basis for

a finding of fraud.  "[O]nly statements of fact are actionable; statements of opinion

cannot give rise to a deceit action, *McEneaney v. Chestnut Hill Realty Corp.,* 38

Mass.App.Ct. 573, 650 N.E.2d 93, 96 (1995), or to a negligent misrepresentation action,

*Logan Equip. Corp. v. Simon Aerials, Inc.,* 736 F. Supp. 1188, 1199 (D.Mass.1990)."

*Cummings*, 244 F.3d at 21.  The construction contract, which is an exhibit to the State

Court Complaint, expressly states "approximate date for completion for phase I" and

uses the word "estimated" in several places in describing the costs for the various

phases of the project.

Count IV of the State Court Complaint alleges conversion based on allegedly

excessive charges for work performed as well as for work not yet performed while

Count V alleged a breach of the covenant of good faith and fair dealing.  In

Massachusetts the tort of conversion depends on the converter's intent to deprive a

rightful owner of property.  It is not necessary to establish that the converter knew that

18

the property was not his.  "[O]ne only need to intend to exercise dominion or control

over the property of another and can be held liable for conversion even if the property

over which he exercised control was believed to be his own."  *Schiappa v. National*

*Marine Underwriters, Inc.*, 1999 WL 788616, 2 (Mass.App.Div.) (Mass.App.Div.,1999).

*See also Kelley v. LaForce,* 288 F.3d 1 (1st Cir. 2002).  Therefore conversion under

Massachusetts law does not establish the requisite intent to deceive needed under §

523.

        The covenant of good faith and fair dealing is implied in every contract.

*Anthony's Pier Four, Inc. v. HBC Assocs.,* 411 Mass. 451, 473 (1991).  It provides "that

neither party may do anything that will have the effect of destroying or injuring the right

of the other party to receive the fruits of the contract."  *Id.* at 471.  It does not create

rights and duties not called for under the contract, *Uno Rests., Inc. v. Boston Kenmore*

*Realty Corp.,* 441 Mass. 376, 385 (2004).  It is not coextensive with a garden variety

claim for breach of contract.  Rather, it "pertains to *bad faith* in the performance of a

contract, not in its execution. *Sheehy v. Lipton Indus., Inc.,* 24 Mass.App.Ct. 188, 194 n.

5 (1987)(emphasis added).  But the bad faith needed to support a claim for breach of

the covenant of good faith and fair dealing is not coextensive with actual fraud.

                A party may breach the implied covenant without breaching
                any express term of the contract....  The essential inquiry is
                whether the challenged conduct conformed to the parties'
                reasonable understanding of performance obligations, as
                reflected in the overall spirit of the bargain, not whether the
                defendant abided by the letter of the contract in the course of
                performance.

*TransCanada Power Marketing Ltd. v. Narragansett Elec. Co*., 542 F. Supp.2d 127, 139

(D. Mass. 2008).

Even if none of the counts except the one for fraud could satisfy the requirements of § 523(a)(2)(A), the fraud count alone would be sufficient to exempt the at least some portion of the judgment from discharge.  But where, as here, the State Court Complaint clearly ties all of the counts to the Defendant's misrepresentations, there is no need to attempt to apportion the damages among the counts.

### The "Actually Litigated" Requirement

Massachusetts will give preclusive effect to consent judgments.  *Nantucket Express Lines, Inc. V. Woods Hole, Martha's Vineyard and Nantucket Steamship Authority,* 350 Mass. 173, 176, 213 N.E.2d 862, 864 (1966).  Yet not all consent judgments satisfy the requirement that the issue to be precluded must have been actually litigated.

> In struggling with the question of the preclusive effect of consent judgments in later bankruptcy proceedings, general principles have emerged. Parties are likely to be precluded from relitigating dischargeability provided that the facts underlying the exception have been explicitly included in the consent agreement, or pleadings incorporated therein, even where dischargeability of a debt was not the issue resolved in the prior litigation. *Klingman v. Levinson,* 831 F.2d 1292, 1294-95 (7th Cir.1987); *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987). However, a consent agreement which merely includes a statement that the parties agree that the debt is not dischargeable in future bankruptcy proceedings without inclusion of the underlying facts serving as the basis for the exception is not adequate for collateral estoppel to be applied to that issue. *Klingman,* 831 F.2d at 1296 n. 3 (debts are dischargeable in bankruptcy unless subject to an exception; public policy considerations prevent a debtor from contracting away the right to discharge in bankruptcy).

*In re Hernandez*, 195 B.R. 824, 829 (Bankr. D.P.R.1996).  *See also In re Olson*, 170 B.R. 161, 167-68 (Bankr.D.N.D. 1994)("When a court is confronted with a consent

judgment founded upon an agreement of the parties, the issue of 'intention' then becomes the polestar for satisfying the defect inherent in fulfilling 'actually litigated' requirement of collateral estoppel."); Restatement (Second) of Judgments § 29, comment (e) (1982)("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. *The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.* (Emphasis added)").

Federal practice treatises agree.  "Justice, then, is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions.*" 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1984) (emphasis added).

The intent of the parties can be inferred either from the language of the judgment or the record. *Barber v. Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Dist. Lodge No. 57,* 778 F.2d 750, 757 (11th Cir.1985).  *See also  In re Berr*, 172 B.R. 299, 306 (9th Cir. B.A.P. 1994); *In re Lacy*, 947 F.2d 1276 (5th Cir. 1991); *Gilbert v. Ben-Asher*, 900 F.2d 1407 (9th Cir.), *cert. denied* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990); *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir. 1987); *In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *Hartley v. Mentor Corp.*, 869 F.2d 1469 (Fed. Cir. 1989).

In the instant case the Agreement for Judgment clearly evidences the parties'

21

intent that the judgment was not to be dischargeable and, as the Court has found, the Defendant intended to be so bound.

Yet even with an express intent that collateral estoppel apply to subsequent litigation, some courts require more, namely a statement of the underlying facts upon which the judgment rests. *Hernandez*, 195 B.R. at 829. *Metropolitan Steel, Inc. v. Halverson (In re Halverson)*, 330 B.R. 291, 330 (Bankr. M. D. Fla. 2005)("If the parties intended for the consent judgment to operate as a final adjudication of the factual issues contained in the judgment, *and if the judgment includes sufficiently detailed findings of fact regarding the issues*, the issues were 'actually litigated' for purpose of applying the doctrine of collateral estoppel.")(emphasis added).  The reference in the Agreement to the specific counts of the Complaint upon which the judgment rests is sufficient to satisfy the need for detailed facts in this case.

### ARGUMENT THAT WAIVER OF DISCHARGE IS AGAINST PUBLIC POLICY

The Defendant argues that his waiver is void against public policy.  The case frequently cited for the proposition that a waiver of the discharge of a particular debt is also against public policy is *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987).  In fact footnote 3 of the case does contain the following frequently quoted language: "For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."  Interestingly though, the case involved the bankruptcy court's application of collateral estoppel to a consent judgment.  The decision was affirmed by the district court and the court of appeals.  Therefore it is helpful to read the quote in the context of the surrounding language in the decision.

> In the consent decree entered into in this case, the parties specifically provided that the debt owed to Ms. Klingman

22

would "not be dischargeable in any bankruptcy or similar
proceeding and that in any subsequent proceeding all of the
allegations of the Complaint and findings of this Court may
be taken as true and correct without further proof." Agreed
Judgment Order at 2; Appellant's Supp.App. at 5. In this
situation, it is certainly reasonable to conclude that the
parties understood the conclusive effect of their stipulation in
a future bankruptcy proceeding. Consequently, the consent
judgment should be given collateral estoppel effect. The
bankruptcy court and the district court therefore properly
applied the principle of collateral estoppel and correctly held
that the appellant's debt was not dischargeable under 11
U.S.C. § 523(a)(4) (internal footnote omitted).

A waiver is different from the application of collateral estoppel.  While the former
is against public policy, the later is not.

**Conclusion**

For the foregoing reasons, the Court finds that relitigation of the dischargeability
action is barred by the doctrine of collateral estoppel.  As the State Court Judgment
preclusively establishes that the judgment is not dischargeable, judgment in the
Adversary Proceeding will enter for the Plaintiffs.

Dated: July 7, 2008

_____   _____
Joel B. Rosenthal
United States Bankruptcy Judge